UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYNN BRANHAM,

        Plaintiff,

                                        CASE NO. 1:07-CV-630

v.
                                        HON. ROBERT J. JONKER

THOMAS M. COOLEY LAW SCHOOL and
DONALD LeDUC,

        Defendants.

_____/

## OPINION

       Plaintiff Lynn Branham brings this action against Defendants Thomas M. Cooley Law School and Donald LeDuc alleging disability discrimination, intentional infliction of emotional distress, and breach of contract. Defendants move for summary judgment on all claims. (Docket #46.) Plaintiff moves for partial summary judgment on the breach of contract claim. (Docket #50.) The Court heard oral argument on these motions on September 16, 2008. (Docket #57.)

## BACKGROUND

       Lynn Branham began teaching at Thomas M. Cooley Law School ("Cooley") in 1983, and she obtained tenure status in 1993. (Branham Deposition at 89-90.) Branham voluntarily left Cooley for another teaching position in 1996, but she returned in the summer of 2003. (*Id.* at 133.) Upon her return, Cooley appointed Branham Associate Dean of its Grand Rapids campus and again awarded her tenured professor status. (*Id.* at 130-31.) During her first tour at Cooley, Ms. Branham had no management role. During her second tour, as Associate Dean, Ms. Branham obviously had a management role. The events giving rise to this litigation occurred in Ms. Branham's second tour at Cooley, and related directly to her new management role at the law school.

During her early years at Cooley, Branham taught Torts I and II.  (*Id.* at 95-96.)  She later taught courses in Criminal Law and Criminal Procedure.  (*Id.* at 101.)  Branham now considers criminal law and procedure to be her area of expertise, but she also excelled as a Torts teacher. Defendant LeDuc – President and Dean at the law school – stated that Branham's "approach to Torts teaching was the best [he had] ever seen."  (Plaintiff's Response, docket #52, Exhibit 4.) Additionally, Cooley Associate Dean of Faculty Charles Cercone stated, "by all accounts, [Branham] was an outstanding Torts teacher." (Defendants' Brief in Support, Exhibit 12.)  There is no evidence that Branham's classroom performance in any subject was anything less than satisfactory.

I. **Branham Clashes with Defendant LeDuc over Management Issues**

As Associate Dean, Branham reported directly to Defendant LeDuc.  (Branham at 138.) LeDuc and Branham disagreed on many issues of school administration and governance.  (*Id.* at 165-66, 175-76.)  The conflict between the two began shortly after Branham was hired as Associate Dean in the summer of 2003, and it persisted and escalated over a period of months and even years. (*Id.* at 149-54, 180-92, 262.)

The primary source of dispute between Branham and LeDuc concerned the faculty hiring process.  The two parties had different opinions on how candidates should be evaluated and how the law school should administer its selection process.  (*See* Defendant's Brief in Support, docket #47, Exhibit 7.)  LeDuc repeatedly expressed his frustration with Branham beginning at least as far back as October 2003.  (*See id.*)  For example, in an October 5, 2003 email, LeDuc told Branham, "Your job is to find ways to get things done, not find ways not to get things done." (*Id.*)  Shortly thereafter, LeDuc wrote to Branham:

We all have our views about who should be hired and how it should be done. Your views are important, because you play a more significant role in the process than others. I need to know what you [sic] vision is, because the arguments you posed to me were not particularly enlightening. The comments you made make me wonder if you lack confidence in our faculty and their teaching abilities . . . .

I am particularly concerned that you somehow want to create a "better" faculty in Grand Rapids than we have in Lansing. Now, I want the faculty to be better everywhere, so the issue is not that the members should be better, but what your concept of "better" is. That seems to be the issue that needs resolution.

(*Id.*)

The discord between Branham and LeDuc intensified in the summer of 2004 when Branham vocally opposed a particular faculty candidate proposed by LeDuc. Branham expressed concern that the proposed candidate was unqualified and that LeDuc's efforts on behalf of the candidate created a conflict of interest. (Plaintiff's Response, docket #52, Exhibits 12, 12A, 14.) Branham filed a formal Conflict of Interest Questionnaire with the law school, and in a follow-up to that questionnaire stated:

But what makes this situation different than any other past employment of faculty members at the law school is that the President's continued employment as an Officer of the law school rests with the Board of Directors, and the person whose employment the President has repeatedly attempted to secure is the spouse of a Board member. The end result has been the appearance, whether or not the reality, of an unseemly quid pro quo: "I will hire your husband if you continue to support my employment as the President and the Dean of the law school." "I will support you as President and the Dean of the law school if you hire my husband."

(*Id.*, Exhibit 14.) LeDuc responded to Branham by informing her that:

It is my opinion that you have been insubordinate, rude, intransigent, unprofessional and disloyal. You have not been a team player. You have a habit of going outside of the appropriate channels to obtain what resources you seek. You have a habit of publicizing your disagreements with decisions by the school in a way that undermines morale. You have persistently flouted the authority of your superiors. I believe that you have thus acted in ways that are not in the best interests of the institution.

(*Id.*, Exhibit 12A.)

As a result of their many disagreements, LeDuc ultimately removed Branham from the Associate Dean Position in August 2004. (LeDuc at 128, 132-34.) Nevertheless, Branham remained a tenured professor of law and retained her full salary and benefits. (*See* Plaintiff's Response, docket #52, Exhibits 10, 12.) In her deposition, Branham testified that her opposition to the faculty candidate proposed by LeDuc was the reason that she was removed from the Associate Dean position. (Branham at 191, 198.)

## II.  **Branham's Teaching Assignments Change**

When she first returned to Cooley in the summer of 2003, Branham was placed in the Criminal Law Department. (*Id.* at 139.) Consistent with this placement, she taught courses in Criminal Law and Criminal Procedure during the fall 2003 and winter 2004 terms. (*Id.* at 143-44.) Branham did not teach any courses during the fall 2004 term. (*Id.* at 145.) Instead, she spent that term completing various administrative tasks leftover from her previous position as Associate Dean. (*Id.*)

In the fall of 2004, Cooley decided to transfer Branham from the Criminal Law Department to the Torts Department. President LeDuc approved the transfer without notifying Branham or attempting to obtain her consent. (*Id.* at 201-02.) In fact, Branham did not become aware of the transfer until the department listings were made public in January of 2005. (Branham at 201.) LeDuc admits that Cooley's practice was to inform faculty members before reassigning them, and that he knew of no other professor who had been reassigned without consenting to the new assignment. (LeDuc at 179-80.)

Branham considers criminal law and procedure to be her area of expertise. (Branham at 204.) She did not want to teach any courses in the Torts Department. (*Id.*) She objected to her transfer and requested a transfer back to the Criminal Law Department. (Branham at 204-05;

Plaintiff's Response, docket #52, Exhibit 18.)  In response to her request, Associate Dean Cercone informed Branham that she would be considered a member of both departments.  (*Id.*)  Branham taught Criminal Law and Criminal Procedure courses in the winter and summer terms of 2005. (Branham at 196.)  She began teaching courses in the Torts Department in the fall 2005 term, when she taught two sections of Equities and Remedies.  (*Id.* at 201.)

III. **Branham Reveals her Epilepsy and Requests Accommodation**

In October 2005, Branham learned that she was scheduled to teach two sections of Torts I for the upcoming winter 2006 term.  (Branham at 207.)  Associate Dean Cercone later informed Branham that the law school needed her to teach a third section of Torts I.  (*Id.*)  In a series of email exchanges beginning December 12, 2005, Branham told Cercone that it was "physically impossible" for her to teach three sections of Torts, and she requested as an alternative that she teach two sections of Torts or three sections of Criminal Law.  (Defendants' Brief in Support, docket #47, Exhibit 12.)  Cercone denied these requests, stating that he was "at a loss" for why it would be physically impossible for Branham to teach three torts classes.  (*Id.*)  Indeed, Branham had excelled as a Torts professor in her first tour at the law school, and no one at Cooley had expressed any dissatisfaction with her current classroom performance in Equities and Remedies.  (*See* Branham at 205.)  Branham responded by informing Cercone that she suffered from epilepsy, and that reassignment was necessary to accommodate her disability.  (*Id.*)  This was the first time Branham disclosed her epilepsy or claimed disability to anyone in management at the law school.  (*Id.* at 213-14.)

Branham was diagnosed with epilepsy in September of 2002.  (*Id.* at 41.)  She has had two grand mal seizures in her lifetime, one in 1987 and one in 2002.  (*Id.* at 41, 45, 47-48, 51.)  She was employed by Cooley at the time of her first seizure, but she told no one at the school.  (*Id.* at 56-57.)

She continued to teach at Cooley without incident and earned tenure status in 1993. (*Id.* at 90.) At the time of her second grand mal seizure and initial epilepsy diagnosis, she was not employed at Cooley. (*Id.* at 41-42.) She returned to Cooley about a year after her second seizure and performed without apparent difficulty until her management clashes with LeDuc. Branham currently is taking medication to manage the effects of epilepsy, and her treating physician described her condition as well-controlled. (*Id.* at 50-51; Dr. Timothy Thoits Deposition at 86.) Branham appears to live a relatively normal life and she is under no significant medical restrictions on account of her epilepsy. (Branham at 62.)

### A. **Cooley's Response to Branham's Initial Request for Reassignment**

In a December 16, 2005 memorandum and letter, Associate Dean Cercone informed Branham that Cooley would not reassign her to Criminal Law or Criminal Procedure courses for the upcoming winter term. (Defendants' Brief in Support, docket #47, Exhibit 12.) Cercone told Branham that reassignment was "not in the best interests of the school," and that Branham's employment contract expressly allowed Cooley, not Branham, to choose the courses that she would teach. (*Id.*) Cercone invited Branham to submit any additional requests for accommodation, and he noted that, "The Law School is willing to assist you in successfully completing this assignment." (*Id.*)

Branham responded to Cercone's memorandum and letter by offering two suggestions. First, she reiterated her request to teach two sections of Torts or three sections of Criminal Law. Second, she requested that Cooley find a replacement professor to teach the first four weeks of each Torts class so that she could prepare teaching materials while still getting "at least some of the rest [she] need[ed]." (*Id.*) Cooley denied these specific requests. As an alternative accommodation, Cooley relieved Branham of all scholarship, faculty committee, and public service obligations. (*Id.*)

B. **Branham Teaches Torts, but Continues to Request Reassignment**

Although she was unsatisfied with Defendants' accommodation, Branham taught three sections of Torts in the winter term of 2006.  Branham evidently continued to work on her independent scholarship during this time, though from the law school's perspective, she was under no obligation to do so.  (Branham at 221-22.)  Branham claims to have suffered "fatigue, stress, and sleep deprivation" as a result of her heavy course-load.  (Branham at 52-63.)  These were the same conditions that preceded Branham's 2002 grand mal seizure, and her physician testified that such conditions often trigger seizures.  (Pl.'s Aff. ¶ 9; Thoits Deposition at 62.)  Branham says she actually experienced a brief "localized seizure" shortly after the winter 2006 term concluded.  (Branham at 51-52.)  This seizure was not diagnosed by any medical professional.  (*See* Thoits at 83.)  In fact, Branham's physician testified that her physical condition has not changed since he began treating her in 2003.  (*Id.*)

Throughout the winter of 2006, Branham reiterated her request to be reassigned to Criminal Law or Criminal Procedure courses.  Cercone refused these requests, and instead offered her the choice of continuing in the Torts Department or being reassigned to Constitutional Law courses.  (Branham at 232-33.)  Branham indicated that she would rather teach Constitutional Law than Torts, and Cercone assented to her request.  (*Id.*)  The record does not disclose why Branham preferred to undertake new course preparations rather than repeat teaching assignments in the Torts Department.  Cooley scheduled Branham to teach one small section of Torts that summer so that she could prepare to teach Constitutional Law the following fall.  (*Id.* at 236.)  In her deposition, Branham described these negotiations with Cercone as "friendly," and she stated that she felt Cercone was trying to be supportive of her.  (*Id.* at 233.)

C.  **Negotiations Between Branham and Cooley Breakdown**

Sometime in the summer of 2006, Branham's physician informed Cooley that Branham should not work more than 40 hours per week and should teach only those subjects in her areas of expertise to reduce stress and fatigue.  (Plaintiff's Response, docket #52, Exhibit 33.)  In July 2006, Branham met with Cercone to discuss the letter. (*See* Defendant's Brief in Support, docket #47, Exhibit 12.)  During that meeting, Branham again stated her request for reassignment to Criminal Law or Criminal Procedure courses, and Cercone again denied those requests.  (*See id.*)  The next day, July 7, 2006, Branham wrote to Cercone:

> The long and short of it, Chuck, is this: In some ways the President [LeDuc] has won.  I rightfully in my opinion, opposed the hiring of the spouse of a Board member who had received one F and five Ds and D+s while a student at Cooley, who cant [sic] spell fire correctly, and whose hiring potentially would have embroiled the law school in a scandal.  I acted not only in the schools [sic] best interests and in furtherance of its Conflict of Interest Policy but in the Presidents [sic] best interests as well, whether or not he wants to admit it.  But since that time, I have been retaliated against repeatedly, with acute ill effects to my health, my family, and my professional reputation.  This, in the end, is what the President wants.

(*Id.*)

This email reveals that Branham herself identified management conflict with President LeDuc, not epilepsy or any other claimed disability, as the real cause of her problems at the law school.  Shortly after her meeting with Cercone, Branham asked for a leave of absence for the fall 2006 term, which was about to begin.  (*Id.*)  Cooley granted her request.  During her leave, Branham renewed her request for a teaching reassignment to Criminal Law.  She asserted that she was physically unable to teach "new courses" because preparation for such courses would exceed her doctor's forty-hour-per-week limitation.  (*Id.*)  However, Branham herself had earlier chosen to teach Constitutional Law rather than to repeat teaching the Torts sections she had recently completed.  (Branham at 232.)  Cooley denied Branham's requests for reassignment to Criminal

Law courses and maintained its position that Branham teach two sections of Constitutional Law upon her return.  (Defendants' Brief in Support, docket #47, Exhibit 12.)

On November 14, 2006, Branham wrote Cercone that, "Although I stand ready to meet my contractual obligation as a member of the law school's faculty, I cannot teach Constitutional Law I next term." (*Id.*)  Branham's employment contract with Cooley states, "The Professor agrees to give instruction in accordance with the established polices of the School, in courses designated by the School." (*Id.*, Exhibit 14.)  On December 11, 2006, Leduc informed Branham that her refusal to teach the assigned courses was an "anticipatory repudiation and abandonment of the contract and thus a resignation from Cooley." (*Id.*, Exhibit 20.)  Branham has not taught at the law school since completing her leave of absence for the fall 2006 term.

**IV.   Branham Sues Cooley and LeDuc**

Branham filed suit on June 2, 2007, claiming that Cooley violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, by denying her request to teach Criminal Law or Criminal Procedure.  Under a similar theory, Branham alleges that both Cooley and LeDuc violated the Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), M.C.L. 37.1102.  Branham also claims that Cooley and LeDuc intentionally caused her severe emotional distress, and that Cooley breached its employment contract by terminating her without a hearing.  Defendants move for summary judgment on all claims.  Branham moves for summary judgment on the contract claim. The Court heard oral argument on these motions on September 16, 2008.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007).  A genuine issue of material facts exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### I. **Disability Discrimination Claims**

The ADA prohibits discrimination against a "qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a). Discrimination includes denying the employee an employment opportunity, or failing to make reasonable accommodations for the employee's known physical or mental limitations. *Id.* at § (b)(5)-(6). Because Michigan courts rely on ADA precedent in interpreting PWDCRA claims, resolution of Plaintiff's ADA claim resolves the PWDCRA claim too. *See Collins v. Blue Cross Blue Shield of Mich.*, 228 Mich. App. 560, 568 (1998) (noting that the ADA and PWDCRA have "similar purposes and definitions, and use similar analyses").

In her Complaint, Plaintiff appears to assert two distinct theories of disability discrimination. First, Plaintiff claims that Cooley actually or constructively discharged her because of her disability. (Complaint, docket #1, ¶ 52.) Second, she claims that Cooley's failure to accommodate her request for reassignment is, standing alone, a violation of the ADA and PWDCRA. (*Id.*, ¶¶ 51, 53.) At oral argument and in the summary judgment briefing, Plaintiff abandoned her first theory of relief and relied exclusively on her "failure to accommodate" theory. The Court finds as a matter of law that no reasonable fact finder could find for Plaintiff under either theory. Accordingly, Defendants are entitled to a summary judgment ruling in their favor on Plaintiff's disability discrimination claims.

A. **Plaintiff's Own Words Recognize that Disability is Not the Cause of Defendants' Conduct.**

Both of Branham's disability discrimination claims arise out of the same underlying issue: Cooley's refusal to allow her to teach the criminal law courses that she preferred to teach. This issue originally surfaced immediately following Branham's removal from the position of Associate Dean in August of 2004. This was over a year before Branham revealed her epilepsy and claimed disability to anyone in management at Cooley. Thus, none of Defendants' actions before December 16, 2005 could even arguably have anything to do with Plaintiff's claimed disability. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (employer must know or have reason to know of plaintiff's disability). Moreover, even after she disclosed her epilepsy, Branham herself appears to have believed that the root cause of Defendants' actions regarding her employment was her management conflict with LeDuc, and not her claimed disability. There is no other reasonable way to construe Branham's email to Associate Dean Cercone on July 7, 2006. (*See* Defendants' Brief in Support, docket #47, Exhibit 12.) Accordingly, because Plaintiff's own written words demonstrate that her claimed disability was not really the driving motivation – much less the "sole" motivation – for Defendants' decisions, she cannot establish the elements of an ADA claim in this Circuit. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (stating that an ADA plaintiff must prove that she was "discriminated against *solely* because of the disability") (emphasis added); *see also Jones v. Potter*, 488 F.3d 397, 409-10 (6th Cir. 2007). In short, based on Plaintiff's own contemporaneous writings, Defendants were acting against her not "because of [her] disability," 42 U.S.C. §12112(a), but because of earlier management conflicts entirely unrelated to her epilepsy.

The federal and state disability statutes prohibit any kind of discrimination against an employee because of that employee's disability. Those statutes do not, however, insulate an

employee who happens to be disabled from actions by an employer that have nothing to do with the employee's disability. *Cf. Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 n. 2 (6th Cir. 2007) (discussing the sole cause requirement). In this case, the tussle over teaching assignments started over a year before Plaintiff revealed her disability in the immediate aftermath of a heated management conflict. Even after she disclosed her epilepsy, Branham still attributed Defendants' conduct to this management conflict, not her epilepsy. (*See* Defendant's Brief in Support, docket #47, Exhibit 52, July 7, 2006 email from Branham to Cercone.) As Plaintiff herself implicitly recognizes, this is not a case of disability discrimination. *See Jones*, 488 F.3d at 408 (stating that plaintiff must show "pretext for unlawful discrimination, not pretext that masks other, nondiscriminatory motives").

B. **Branham's Well Controlled Epilepsy is not a "Disability" under the ADA**

To obtain ADA protection, Plaintiff must show that she is a "qualified individual with a disability." *See id.* at 1178. The ADA defines disability as a "physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A). Major life activities include functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). Epilepsy is a physical impairment, *see, e.g., Otting v. J.C. Penney Co.*, 223 F.3d 704, 710 (8th Cir. 2000), but not every physical impairment qualifies as a disability under the ADA. *See McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997). Whether a person has a disability under the ADA is an "individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

Defendants do not dispute that Lynn Branham suffers from epilepsy. Rather, Defendants argue that Branham's epilepsy does not substantially limit her in any of life's major activities. Branham counters that she has difficulty thinking, learning, and working. While such activities are

"major life activities" under the ADA, *see* 29 C.F.R. § 1630.2(j), the record does not support Branham's claim that her epilepsy substantially limited her ability to perform these tasks. Branham's own physician testified that her epilepsy was under control and that her physical condition remained unchanged in the three years preceding this litigation.  Moreover, Branham admits that her epilepsy does not prevent her from preparing for and teaching at least some subjects, namely Criminal Law or Criminal Procedure.  Furthermore, Branham's actual performance in teaching Torts classes was beyond criticism based on this record.  Consequently, Branham cannot establish that epilepsy "significantly restricted" her ability to think and concentrate as compared to an "average person in the general population." *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 317 (6th Cir. 2001); 29 C.F.R. § 1630.2(j)(1)(i).  Preparing for Torts or Constitutional Law courses may have been difficult and time consuming, but such is the nature of learning any new subject. *See Mulholland v. Pharmacia & Upjohn, Inc.*, 2001 WL 311241 (W.D. Mich. 2001) (holding that a slight to moderate difficulty in learning new tasks or subjects does not constitute a substantial limitation); *see also Knapp v. City of Columbus*, 192 Fed. Appx. 323, 328-29 (6th Cir. 2006) (holding that plaintiff's ADHD did not substantially limit his ability to learn those tasks "central to most people's lives").  Moreover, Torts was not a new subject at all.  Branham had taught Torts in the past, and by all accounts had done an excellent job.

For these same reasons, Branham cannot establish that she was substantially limited in her ability to work.  Sixth Circuit precedent is clear that an "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Swanson*, 268 F.3d at 318 (citing 29 C.F.R. § 1630.2(j)(3)(i));  *McKay v. Toyota Mfg., U.S.A., Inc.*, 110 F.3d 369, 372 (6th Cir. 1997).  Even assuming that epilepsy prevented Branham from teaching Torts and Constitutional Law, such a narrow limitation is not enough to obtain ADA protection. *See McKay*,

110 F.3d at 373 (holding that plaintiff must show that her disability "significantly restrict[s] her ability to perform either a class of jobs or a broad range of jobs in various classes"); *see also Rutlin v. Prime Succession, Inc.*, 75 F. Supp. 735, 738 (W.D. Mich. 1999) (holding that 40-hour per week limitation is insufficient, without more, to establish a substantial limitation).  Branham's inability to teach one or two law school subjects may be frustrating, but it is not "substantially limiting" within the meaning of the ADA.  On this record, it appears beyond any reasonable dispute that the teaching assignment issue for all involved parties – Plaintiff as well as Defendants – had everything to do with an unresolved power struggle over management conflict, and nothing to do with a real or claimed disability.

This Court recognizes that epilepsy is a serious condition and that some persons suffering from epilepsy clearly are disabled within the meaning of the ADA.  *See*, *e.g.*, *Otting*, 223 F.3d at 709-10 (finding disability where plaintiff suffered frequent epileptic seizures that prohibited her from driving a car or bathing by herself).  Nevertheless, Branham's epilepsy simply does not rise to this level.  She has experienced only two grand mal seizures in her lifetime, and she has not suffered a diagnosed seizure of any severity since 2002.  (Thoits at 68, 86.)  After her first seizure, Branham went on to earn a tenured faculty post at Cooley.  During her second tour at Cooley, she never suffered a grand mal or any other severe seizure.  As this Court noted in *Rutlin*, seizures can be disabling when they occur, but it is the severity and frequency of such seizures that determine whether a person is "substantially limited."  *See* 75 F. Supp. 2d at 738.  Moreover, although Branham claims to have "suffer[ed] symptoms which she believed to be a precursor of another grand mal seizure," (Plaintiff's Response, docket #52 at 24), the "mere possibility that an adverse health condition could recur or require further treatment [is] not sufficient to establish that the condition [is] substantially limiting."  *Swanson*, 268 F.3d at 316.  Accordingly, the Court finds that Plaintiff

14

has failed to adduce evidence sufficient to create a genuine issue of fact as to disability.  Therefore, Defendants are entitled to summary judgment on the ADA and PWDCRA claims.

### C.  **Defendants Did Not Fail to Offer or Make Reasonable Accommodations**

Even if Plaintiff could establish that she is disabled within the meaning of the ADA, she still is unable to prove that Defendants discriminated against her because of her disability.  The ADA defines discrimination in a variety of ways, two of which are applicable to the facts of this case.  First, the ADA prohibits an employer from "denying employment opportunities . . . to an otherwise qualified individual with a disability, if such denial is based on the need of [the employer] to make reasonable accommodation[s]."  *See* 42 U.S.C. § 12112(b)(5)(b).  In her complaint, Branham appears to assert a claim under this section of the statute by stating that Cooley actually or constructively terminated her because of her disability.  However, Branham abandoned this claim at oral argument and in her summary judgment briefing papers.

The ADA also defines discrimination to include denying a "reasonable accommodation to . . . an otherwise qualified individual with a disability," unless the employer can show that the accommodation would pose an "undue hardship" on its business operation.  42 U.S.C. § 12112(b)(5)(A).  The employee bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable.  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004).  "Reasonable accommodation" may include assignment to a vacant position, but the employer need not create new jobs, displace other employees, or waive legitimate non-discriminatory employment policies.  *Id.* (citing 42 U.S.C. § 12111(8) and 29 C.F.R. § 1630.2(o)(2)(ii)).  Once the employee has proposed a reasonable accommodation, the employer has a duty to engage in an informal "interactive process" with the employee to determine what the actual accommodation will be.  *See Lockard v. General Motors Corp.*, 52 Fed. Appx. 782, 788 (6th

Cir. 2002). Both parties have a duty to participate in good faith throughout the interactive process. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). The employer has the ultimate discretion to choose between effective accommodations. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 801 (6th Cir. 1996).

Branham claims that Cooley violated the ADA by failing to accommodate her reasonable request for reassignment to Criminal Law or Criminal Procedure courses. As a threshold matter, Branham fails to show that there were any vacant positions available when she requested reassignment for the winter term of 2006 and beyond. In correspondence dated November 21, 2006, Cercone notified Branham that:

> [N]o Criminal Law or Criminal Procedure course assignments are available. Accommodating you in the fashion you request would require removing faculty members from assignments already made to professors both more senior and more experienced in the criminal law field than you are.

(Defendants' Brief in Support, docket #47, Exhibit 20.) Branham counters that there was no reason to transfer her from the Criminal Law Department to the Torts Department in January of 2005, but this argument misses the point. The uncontradicted evidence shows that no one in management at Cooley had any knowledge of Branham's epilepsy when she was initially transferred to the Torts Department in January 2005. Similarly, Cercone had no knowledge of Branham's epilepsy when he scheduled her to teach three sections of Torts I for the winter 2006 term. Defendants' duty to reasonably accommodate Branham was not triggered until they learned of her epilepsy on December 14, 2005. Because Branham presents no evidence that there were Criminal Law or Criminal Procedure course assignments available at that time, her claim fails as a matter of law. *See Kleiber*, 485 F.3d at 869 (granting summary judgment for defendant where plaintiff failed to establish that a vacancy existed at the time plaintiff sought accommodation for his disability).

Even if Branham could show that there had been a vacant position in the Criminal Law Department, she still would have to show that Defendants' alternative accommodations were unreasonable or ineffective. *See Hankins*, 84 F.3d at 800-01 (noting that an employee cannot unilaterally dictate the details of his accommodation). The purpose of the ADA's "interactive process" requirement is to "identify the precise limitations resulting from the disability and [the] potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871. The statute does not allow an employee to choose a specific accommodation if another reasonable accommodation is provided instead. *Hankins*, 84 F.3d at 800-01.

The record reflects an ongoing negotiation between Branham and Cooley regarding various possible accommodations. Cooley relieved Branham of non-classroom duties, allowed her to switch to the Constitutional Law Department, and granted her a leave of absence to accommodate her epilepsy. Branham clearly preferred to teach Criminal Law or Criminal Procedure, but she fails to show why Defendants' alternative accommodations were ineffective in reducing her overall work hours. As the *Hankins* Court noted, an employee is not required to accept the employer's proffered accommodation, but failure to do so results in a loss of ADA protection if the employee also fails to show why the accommodation was unreasonable. *Id.* (citing 29 C.F.R. § 1630.9(d)). Branham presents no evidence that Defendants' accommodations were unreasonable, and thus her claim under this prong of the ADA fails as a matter of law.

## II. **Intentional Infliction of Emotional Distress**

Branham claims that Defendants "intentionally and maliciously" caused her severe emotional distress by retaliating against her for her opposition to LeDuc and refusing her repeated requests for

17

disability accommodation.  Assuming *arguendo* that such a claim is cognizable under Michigan law,[1] Plaintiff's claim here fails.

To state a claim for intentional infliction of emotional distress Branham must show that Defendants intentionally or recklessly engaged in "extreme or outrageous" conduct causing her severe emotional distress.  *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 630 (1993).  Extreme and outrageous conduct is conduct that transcends "all possible bounds of decency" and is "utterly intolerable in a civilized community."  *Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 625-26 (1986).  This standard is an onerous one, and Michigan courts have rejected intentional infliction claims even in egregious situations.  *See, e.g., Meek v. Mich. Bell Tel. Co.*, 193 Mich. App. 340, 346-47 (1991) (summary judgment for employer where employee was subjected to repeated sexual and religious harassment); *Khalifa v. Henry Ford Hosp.*, 156 Mich. App. 485, 499-500 (1986) (summary judgment for employer where employee was subjected to repeated national origin discrimination and workplace harassment).

Branham's cause of action for intentional infliction of emotional distress is based on her claim that Defendants (1) removed her from the Associate Dean position; (2) transferred her from the Criminal Law Department to the Torts Department; (3) assigned to her an unnecessary overload of courses; and (4) failed to provide her with reasonable accommodations after discovering she had

---

[1] The Michigan Supreme Court has not formally recognized the tort of intentional infliction of emotional distress.  In *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985), the Court assumed, but did not decide, that Michigan law recognized such a claim.  *Id.* at 602-03.  Michigan Courts of Appeals subsequently have recognized the claim, *see, e.g., Kamalnath v. Mercy Memorial Hosp. Corp.,* 194 Mich. App. 543, 555 (1992), but this Court must analyze and apply state law in accordance with the decisions of the state's highest court.  *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  Because there are no controlling Michigan Supreme Court decisions on this issue, this Court normally would attempt to ascertain how the Michigan Supreme Court would rule if faced with this claim today. *See id.*  However, because Branham's intentional infliction of emotional distress claim fails to meet the test articulated in *Roberts*, this Court need not answer the question of whether the Michigan Supreme Court would recognize the claim under different facts.

epilepsy.   Even taking this version of the facts at face value, they do not demonstrate that

Defendant's conduct transcended "all bounds of decency . . . in a civilized community."  *See Meek*,

193 Mich. App. at 346.  As already seen above, Branham and President LeDuc engaged in an open

and extended power struggle over management issues of importance to both parties.  Open discourse

may well be the engine that drives a strong law school, but strong personalities sometimes need to

part ways to permit each to thrive in separate places.   Regardless of whether it is nice, wise or

charitable, there is nothing uncivilized or outrageous about Cooley and President LeDuc acting to

enforce their management choices at the expense of Associate Dean Branham.  As the Michigan

Supreme Court noted in *Roberts*:

> The rough edges of our society are still in need of a good deal of filing down, and in
> the meantime plaintiffs must necessarily be expected and required to be hardened to
> a certain amount of rough language, and to occasional acts that are definitely
> inconsiderate and unkind.  There is no occasion for the law to intervene in every case
> where someone's feelings are hurt.

422 Mich. at 603 (citing Restatement of Torts, 2d, § 46, comment d).  Branham fails to cite to any

Michigan case law where comparable actions have given rise to a tort claim for intentional infliction

of emotional distress.  Accordingly, Defendants are entitled to summary judgment on this issue.  *Cf.*

*Talley*, 542 F. 3d at 110-11 (dismissing a similar claim for intentional infliction of emotional distress

under Ohio law).

III.  **Breach of Contract**

Branham claims that Defendant Cooley breached its contract by terminating her without a

hearing.  Cooley contends that Branham is not entitled to a hearing because she resigned or

abandoned her position.  Both parties move for summary judgment on this issue.  But just because

both parties move for summary judgment, does not mean that either party is entitled to it.  *See B.F.*

*Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001).  Rather, "the court must

evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (internal citations omitted).

The employment contract between Branham and Cooley states that Branham "holds the rank of Tenured Professor of Law, with all the rights and privileges thereof." (Plaintiff's Response, docket #52, Exhibit 11.) The contract provides that Branham "agrees to give instruction in accordance with the established policies of the School, in courses designated by the school." The contract also incorporates by reference Cooley's Academic Rank and Tenure policies and the American Bar Association (ABA) standards governing tenured faculty rights. Neither party disputes the validity of the contract.

Cooley's Academic Rank and Tenure policy states:

No tenured faculty member shall be dismissed . . . except for good cause shown in accordance with the following procedure:

(a)     Notice in writing by the dean of the reasons and grounds for dismissal shall be served on the faculty member . . .

(b)     The Dean shall thereafter cause a meeting of the faculty conference to be convened for the purpose of considering removal of the faculty member.

(c)     If the faculty conference shall concur in removal, the faculty member shall be removed, subject to appeal to the academic committee of the Board of Directors.

(d)     If the faculty conference shall not concur in removal, the faculty member shall not be removed, but the Dean may refer the matter to the academic committee of the Board of Directors, which shall conduct a hearing and make a recommendation to the Board of Directors.

(e)     The Board of Directors shall have final authority in all matters of dismissal of tenured faculty members . . .

(*Id.*, Exhibit 43.) The Policy also states that the faculty member has a right to counsel at all hearings. Additionally, the ABA standards provide that:

Termination for cause . . . should, if possible, be considered by both a faculty committee and governing board of the institution. In all cases where the facts are in

> dispute, the accused teacher should be informed before the hearing in writing of the charges against him and should have the opportunity to be heard in his own defense.

(*Id.*, Exhibit 44).

Before analyzing the parties' summary judgment motions, it is important to identify where there is common ground. Both sides agree that, if Cooley fired Branham, she is entitled to notice and a hearing before the faculty conference. Similarly, both sides agree that, if Branham voluntarily resigned, she is not entitled to a hearing. The problem here is that the parties do not agree on how to characterize the separation. Branham says she did not resign, and that she remained willing to honor her contract but unable to teach the particular courses assigned. Defendants say Branham abandoned her job by refusing to teach the assigned courses, and that they did not fire her.

Of course, with good and strong-minded lawyers on both sides, no one uttered the magic words, "I quit" or "you are fired." Instead, both parties invite the Court to characterize their actual words as a matter of law. Cooley argues that Branham necessarily resigned her position when she declined to teach Constitutional Law. Branham argues that Cooley necessarily "dismissed" her by refusing to grant her request to teach Criminal Law or Criminal Procedure. But neither conclusion is compelled as a matter of law on this record. The question of whether Branham quit or was fired is really a question of fact analogous to a case of constructive discharge. Although neither party squarely addresses the issue of constructive discharge, there is evidence in the record sufficient to allow a reasonable jury to find for either party on this question. Therefore, neither side is entitled to summary judgment on the breach of contract claim.

### A. **Defendants' Motion for Summary Judgment**

Defendants rely on *Tomiak v. Hamtramck Sch. Dist.*, 426 Mich. 678 (1986) for the proposition that a teacher loses her tenure rights when she abandons her employment. In that case,

the Michigan Supreme Court ruled that abandonment is equivalent to a voluntary resignation, and

that a teacher who voluntarily resigns forfeits the protections afforded by tenure status. *Id.* at 699;

*see also Berry v. Mich. Bell Tel. Co.*, 319 F. Supp. 401, 405 (D.C. Mich. 1967) (discussing

abandonment doctrine in non-tenure context).

Defendants' reliance on *Tomiak* is unavailing because it assumes the answer to a question

yet to be decided: did Branham abandon her position?  At best, the record is ambiguous on this

issue.  As detailed throughout this opinion, Branham, LeDuc, and Cercone engaged in a lengthy and

often heated argument over whether Cooley would accommodate Branham's repeated requests for

reassignment.  This discussion climaxed on November 11, 2006 when Branham wrote to Cercone:

> I cannot teach Constitutional Law I because, as you have been apprised repeatedly
> by my neurologist and me, I am in need of a reasonable accommodation due to my
> epilepsy.  The school has failed to meet, or attempt to meet, that need, a failure that
> has already caused me to suffer injurious effects to my health.  I cannot allow my
> health to be further impaired by this refusal to provide a reasonable accommodation.
> Although I stand ready to meet my contractual obligations as member of the law
> school's faculty, I cannot teach Constitutional Law I next term.

(Defendant's Brief in Support, docket #47, Exhibit 12.)  Ten days later, Cercone informed Branham

that he considered her refusal to teach Constitutional Law a breach of contract.  (*Id.*, Exhibit 20.)

On December 11, 2006, LeDuc wrote to Branham:

> I find that your [refusal to teach Constitutional Law] is an unequivocal indication of
> intent not to perform you obligation under the contract.  Your failure to perform
> would be a material breach of the contract.  Therefore, your statement constitutes an
> anticipatory repudiation and abandonment of the contract and thus a resignation from
> Cooley.

(*Id.*)

Despite Defendants' characterization to the contrary, Branham's November 11 email does

not as a matter of law amount to an abandonment of her position at Cooley.  In fact, the plain

language of the email seems to indicate that Branham intends to retain her position.  *Cf. Tomiak*, 426

22

Mich. at 693 (noting that plaintiff's words and actions evidenced a definite intent to abandon his position). As the *Tomiak* Court noted, "abandonment doctrine cannot be employed against a tenured teacher who manifests every intention of continuing on the job." *Id.* In this case, a reasonable fact-finder could conclude that Branham intended to remain a professor of law at Cooley. Her refusal to teach the assigned courses may provide Cooley with just cause for terminating her, but if Cooley chooses to do so, she is entitled to dispute such cause at hearing before the faculty conference. This Court cannot conclude that, as a matter of law, Branham voluntarily abandoned her position. Therefore, Defendants are not entitled to summary judgment.

Even if Branham did abandon her position, there still is a question of fact as to whether the abandonment was voluntary. In other words, there is a question of fact as to whether she was constructively discharged. Constructive discharge occurs when an "employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *See*, *e.g.*, *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 487 (1994). Once established, constructive discharge is treated as an actual discharge. *Champion v. Nationwide Security, Inc.*, 450 Mich. 702, 711 (1996). Michigan courts are clear that constructive discharge is normally a question of fact. *See Vagts*, 204 Mich. App. at 487-88. Moreover, the Sixth Circuit has noted that "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008) (quoting *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993)).

Looking at Cooley's entire course of conduct, including actions taken before Branham revealed her epilepsy, there is a question of fact as to whether Branham was constructively discharged. Cooley clearly was dissatisfied with Branham for, amongst other things, her vocal

opposition to LeDuc.  Cooley (1) removed Branham as Associate Dean; (2) transferred her to the Torts Department; and (3) refused her repeated requests for reassignment, even after she revealed that she suffered from epilepsy.  There may be legitimate explanations for these actions, but on Defendants' motion for summary judgment all reasonable inferences must be drawn in favor of Branham.  The evidence in the record would allow a reasonable fact-finder to conclude that Defendants intentionally and deliberately made working conditions intolerable for Branham in an effort to force her resignation.  *See Vagts*, 204 Mich. App. at 487-88; *Talley*, 542 F.3d at 1109.

If Branham can show at trial that she was constructively discharged, the employment contract unequivocally provides her with a right to a hearing.  Because there is a question of fact as to constructive discharge, there is also a question of fact as to whether Cooley breached the contract by denying Branham a hearing.  *See Champion,* 450 Mich. at 711 (stating that constructive discharge is equivalent to actual discharge).  Consequently, Defendants are not entitled to summary judgment on this claim.

B.  **Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on the contract claim, but she concedes that "whether Branham quit is a factual issue."  (Plaintiff's Response, docket #52, at 16.)  This concession alone would appear to mandate denial of her summary judgment motion on this issue.  The contract provides a right to a hearing only where a tenured faculty member is "dismissed," not when the faculty member quits.  The record here demonstrates that Branham was adamantly unwilling to teach the courses assigned to her for the winter 2007 term.  Her contract requires her to teach assigned courses.  If Plaintiff can persuade a jury that the teaching assignment was part of a pattern of conduct undertaken by Defendants with the intent and effect of making her life at Cooley intolerable, she would establish a constructive discharge and be entitled to the contractual

24

Case 1:07-cv-00630-RJJ   ECF No. 61 filed 11/24/08   PageID.1484   Page 25 of 25

protections of a dismissed tenured member of the faculty. A reasonable jury could make that finding. But a reasonable jury could also find that the teaching assignments and other conduct of Defendants did not amount to a constructive discharge. In that case, Plaintiff could not claim the contractual benefits of a "dismissed" faculty member.

Instead of addressing the constructive discharge question head on, Plaintiff argues in effect that a tenured professor is entitled to a hearing so long as she does not affirmatively renounce her position by saying the words, "I quit." Plaintiff cites no authority, controlling or otherwise, in support of this position. Rather, Plaintiff's claim is based on broad understanding of what the word "tenure" should mean. Plaintiff's understanding of academic tenure may make good sense from a policy perspective, but this Court cannot define the scope and meaning of tenure in a law school setting; the Court can simply construe the parties' actual contract. The contract provides a right to a hearing only where the faculty member is "dismissed." That conclusion depends on disputed issues and characterizations of fact. Therefore, Plaintiff is not entitled to summary judgment for Defendants' failure to provide a hearing.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the ADA, PWDCRA, and intentional infliction of emotional distress claims. Defendants' motion is denied as to the breach of contract claim. Plaintiff's motion for partial summary judgment on the breach of contract claim is denied.


Dated:   November 24, 2008              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE