UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYNN BRANHAM,

       Plaintiff,

v.

THOMAS M. COOLEY LAW SCHOOL
and DONALD LeDUC,

       Defendants.
_____/

CASE NO. 1:07-CV-630

HON. ROBERT J. JONKER

## **OPINION**

      This case is part of a long running dispute between Thomas M. Cooley Law School and its Dean and President, Donald LeDuc, on the one hand, and Lynn Branham, a former tenured faculty member and subordinate Dean, on the other hand. The dispute culminated in a tenure hearing under the terms of Ms. Branham's contract, where her fellow faculty members voted overwhelmingly, 85-19, in favor of her removal. The Academic Committee of the Law School Board of Directors then convened and voted unanimously to affirm the faculty's vote, and the Law School Board of Directors voted unanimously to adopt the resolution of the Academic Committee. Ms. Branham enjoyed the unfettered ability to present her side of the dispute, including the ability to contact faculty members personally, to provide written materials to the faculty, to use the Law School's technology to create and present a visual display, to present orally her case at the faculty meeting, and to have her attorneys and other faculty members speak on her behalf. She took advantage of this opportunity and submitted a 108-page personal statement to the faculty that included 96 pages of exhibits. When she exceeded the time allotted for her presentation at the meeting, the faculty conference allowed her

to continue. Ms. Branham ultimately failed to persuade her fellow faculty members that the administration mistreated her under the terms of her tenure contract. The only question remaining is whether there is any lawful basis for the Court to second guess the outcome of the contractual tenure process. The Court concludes that Ms. Branham has received what her tenure contract promised and that there is no basis for judicial second guessing of the outcome. Judgment must now enter in favor of Defendants and against Ms. Branham.

## FACTS

Ms. Branham first filed this case in July 2007, after the Law School terminated her employment without providing her a tenure hearing. Defendants claimed that no tenure hearing was necessary because Ms. Branham effectively abandoned her job when she refused to teach the courses assigned to her and moved with her family to southern Illinois for new work. She alleged that Defendants had violated the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act, intentionally inflicted emotional distress on her, and breached her employment contract. The Court granted summary judgment against Ms. Branham on all of the claims except breach of contract. (Docket # 62.) In September 2009, the Court held a bench trial on the contract claim, in particular on whether Ms. Branham was entitled to a tenure hearing, or whether Ms. Branham had repudiated her contract as a matter of law and lost her tenure rights. After a four-day bench trial, the Court found that the Law School had breached the contract by terminating Ms. Branham without providing her with the process guaranteed by Policy 201, the Law School's tenure policy. The Court therefore ordered the Law School to provide Ms. Branham with the tenure hearing process specified in Policy 201.

2

Policy 201 sets forth the procedure the Law School must follow when removing a professor for "good cause shown." Ms. Branham's Standard Faculty Contract incorporates Policy 201, as well as "[t]he current provisions of the American Bar Association standards governing approval of law schools as they relate to . . . other rights, duties, and prerogatives of faculty members." (*See* docket # 115 ex. A-1 at 4.) Under Policy 201, no professor may be dismissed "except for good cause shown and in accordance with the following procedure." (Docket # 115 ex. A-2 ¶ 12.) The procedure requires that (1) the dean serve on the professor notice in writing "of the reasons and grounds for dismissal" at least "fourteen days prior to a meeting of the faculty conference at which the removal is to be considered"; (2) the dean convene a meeting of the faculty conference for the purpose of considering the removal of the professor; (3) if the faculty conference concurs in the removal of the professor, the professor may appeal the decision to the academic committee of the Board of Directors; (4) if the faculty conference does not concur in the removal, the dean may appeal to the academic committee of the Board of Directors; (5) "[t]he Board of Directors shall have final authority in all matters of dismissal . . . "; and (6) at any tenure hearing in front of the faculty conference or the Board of Directors, the professor is entitled to counsel and a stenographic record must be made of the proceedings. (*Id.*)

After the trial and the Court's order, Defendants provided Ms. Branham with the process guaranteed by Policy 201. On September 16, 2009, Dean LeDuc notified Ms. Branham in writing that the faculty conference would be asked to concur in her removal at its next meeting, which was scheduled for October 6, 2009. (Docket # 115 ex. A-3.) Dean LeDuc included the grounds for his dismissal of Ms. Branham in his notice to her. (*Id.*) He also provided her with a copy of his written statement to the faculty conference. (*Id.*) In the notice, Dean LeDuc informed Ms. Branham that

3

she could submit a similar written statement for the faculty conference to consider, that each side would have forty-five minutes to present its case at the meeting, and that neither side would be permitted to call witnesses. (*Id.*)

The written statement that Dean LeDuc provided to the faculty conference asks "that the faculty conference concur in the removal of Professor Lynn Branham from the Law School's faculty." (Docket # 115 ex. A-3.) It states as the ground in support for the request:

> Repeated Refusal to Accept Lawful Assignments to Teach the Courses Professor Branham Was Designated to Teach as Required by Her Faculty Contract, <u>Which Is a Breach of that Contract and Good Cause for Her Removal</u>.

(*Id.*) It then describes in twenty-four paragraphs the specific grounds that support Dean LeDuc's position. (*Id.*) In short, it asserts that Ms. Branham regularly balked and eventually refused outright her contractually-permitted teaching assignments. (*See id.*) The twenty-fourth ground for dismissal states: "Thomas M. Cooley Law School has good cause to discharge Professor Branham from employment." (*Id.*) The final paragraph of the letter to the faculty conference is titled "**Action Requested**," and it asks "the faculty conference to concur in the removal of Professor Branham from the Law School's faculty." (*Id.*)

In response, Ms. Branham submitted in advance of the conference a 108-page personal statement to the faculty. In it, she does not dispute the basic premise that she refused to teach the courses she was assigned to teach or that the assignment reflected a teaching load that was within her contractual limits. (*See* docket # 116 ex. A.) Instead, she contended that Defendants were motivated to assign her to teach courses they knew she did not regularly teach or want to teach because of a retaliatory animus. Specifically, she contended that Dean LeDuc was trying to get rid of her because she had resisted in her capacity as Associate Dean his efforts to hire a professor. (*Id.*)

She further contended that she had resisted the assignments because her health limited her ability to prepare for and teach the new courses. (*Id.*) She also asked the faculty to conclude that she was merely negotiating her assignment because she offered to teach a set of classes, just not the classes to which she was assigned. (*Id.*) In short, she asked the faculty to conclude that her refusal to teach the assignments was not good cause to fire her because there were extenuating circumstances. (*See id.*)

The meeting of the faculty conference convened as scheduled on October 6, 2009. At the meeting, she had her attorneys present, and a stenographic record of the meeting was made. Associate Dean Charles Cercone presented the position of the administration that Dean LeDuc had good cause to remove Plaintiff from her position. Ms. Branham's attorneys then spoke on her behalf, followed by Ms. Branham herself. Ms. Branham exceeded her time allotment, but she was allowed to continue speaking. Ms. Branham's second attorney then spoke on her behalf. At the conclusion of the formal presentations by Dean Cercone, Ms. Branham, and her two attorneys, the faculty members were given the opportunity to speak. Thirteen members of the faculty did so. In total, the meeting of the faculty conference lasted over three hours. The faculty conference then voted to concur in Dean LeDuc's removal of Ms. Branham from her position as a tenured law professor. The faculty conference voted in accordance with the rules put forth in its bylaws. (*See* docket # 115 ex. A-5.) The final tally was 85-19 in favor of removal, with four abstaining.

Ms. Branham then appealed the faculty conference's concurrence to the Academic Committee of the Law School Board of Directors. The Academic Committee set a briefing schedule for both parties and scheduled a meeting on February 19, 2010 to hear the appeal. Ms. Branham filed her briefing with the Academic Committee, but she did not appear in person at the meeting.

She was represented there, however, by her attorneys, and a stenographic record of the proceeding was made. At the meeting, the Academic Committee voted unanimously to affirm the faculty conference's concurrence in Dean LeDuc's removal of Ms. Branham from the faculty. The next day, the Law School Board of Directors voted unanimously, with three Board members[1] abstaining, to adopt the resolution of the Academic Committee concurring in the faculty conference's concurrence in Dean LeDuc's removal of Plaintiff from the faculty. (*See* docket # 115 ex. A-8.)

## ANALYSIS

There are three issues framed for decision. First, did Ms. Branham receive the process due her under the contract? Defendants say yes. Ms. Branham says that she actually should have received a more formal trial process, complete with witnesses and the opportunity to cross-examine those witnesses. Second, what, if any, substantive review of the outcome of the process may the Court impose if the process complied with the contract? Defendants say none, because the outcome of the process is contractually final. Ms. Branham contends that the Court has essentially plenary power, up to and including the right to conduct a trial on the question of whether there was good cause for her removal. Finally, does the contract guarantee Ms. Branham one year's severance pay regardless of the outcome of the tenure process? Defendants say no. Ms. Branham says yes. The Court now addresses and resolves each issue.

I.   Defendants provided Ms. Branham with the contractual tenure process.

After the Court ordered Defendants to provide Ms. Branham with the process guaranteed in Policy 201, Dean LeDuc and the Law School did so. They complied with the procedural guarantees provided by Policy 201, and they determined after completing that process that there was good cause

---

[1] Thomas Cramer, the Honorable Jane Markey, and Donald LeDuc abstained.

to remove Ms. Branham. Dean LeDuc articulated in a letter to the faculty conference the reasons that he felt constituted good cause for Ms. Branham's removal, and the faculty conference concurred in his motion. The Academic Committee of the Law School Board of Directors considered the matter on appeal and voted unanimously to affirm the faculty conference's concurrence in Dean LeDuc's removal of Ms. Branham from the faculty. The Law School Board of Directors then voted unanimously to adopt the resolution of the Academic Committee concurring in the faculty conference's concurrence in Dean LeDuc's removal of Plaintiff from the faculty. At every meeting, Ms. Branham was entitled to and in fact had counsel, and at every meeting a stenographic record was made of the proceeding. The Law School followed every aspect of the "internal grievance procedure" provided in Ms. Branham's good-cause contract, the procedure afforded her "elementary fairness," and the Law School reserved for itself the final authority to determine whether there was good and just cause.

Ms. Branham contends that the Law School did not follow the procedure because it did not ask the faculty conference to find good cause for her removal. This contention is without merit. The letter informed the faculty committee that Dean LeDuc believed he had good cause to remove Ms. Branham, it described the facts that he believed constituted good cause, and it asked the faculty to concur in his conclusion that the Law School had good cause to remove Ms. Branham from the faculty. (*See* docket # 115 ex. A-3.) Dean LeDuc thereby asked the faculty conference to find good cause for Ms. Branham's removal. (*See id.*) The faculty's overwhelming vote in favor of removing Ms. Branham's removal demonstrates that they concurred in Dean LeDuc's conclusion that there was good cause to remove her.

Ms. Branham also contends that she is entitled to employment protections stemming, not from her contract, but from an abstract notion of "tenure." She asserts that "[c]learly, tenure gives a person *more* rights than any employment contract with a 'just cause' term." (Docket # 117 at 7.) This is in line with her contentions throughout the case that her position as a tenured professor entitled her to a "lifetime appointment" and that her protections are set by the ABA's definition of tenure, rather than the guarantees provided in her contract. (*See, e.g.*, docket # 125, June 30, 2010 Hearing Tr. at 8, 9.) Indeed, many of the conflicts in this case appear to stem from her extreme and contractually erroneous view of the rights her contractual tenure guarantees. She relies for this proposition on the expert testimony of Dean Read and the fact that the Law School was accredited by the ABA. Neither of these, however, support her implied assertion that "tenure" means anything other than what her employment contract provides. Indeed, this contention is precisely contrary to Michigan law. *See Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 271 (Mich. 1991). And Ms. Branham has previously conceded that nothing prevents a law school from defining in their employment contract "tenure" in any way the parties wish, regardless of the ABA's definition of tenure. (Docket # 125, June 30, 2010 Hearing Tr. at 9.) Any employment protection relating to cause or the process for determining cause must arise from a contractual obligation. *See id.*; *cf. Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 892 (Mich. 1980). Ms. Branham's contention to the contrary is without merit.

Ms. Branham further asserts that she is entitled in her termination process to the particular procedural protections described in other cases. But the particular protections she demands either (1) were guaranteed by the contracts at issue in those cases and not in her employment contract, or

(2) were not actually guaranteed in the case on which she relies. Accordingly, the Law School's failure to give her the protections she seeks does not invalidate its determination.

Ms. Branham relies heavily on one Michigan case for the proposition that she should have been permitted to call witnesses at the faculty conference. *See Renny v. Port Huron Hosp.*, 398 N.W.2d 327, 332 (Mich. 1986). In *Renny*, however, the plaintiff's employment agreement guaranteed her the right to call witnesses. *See id.* ("While Scheib testified that plaintiff could ask the board to call witnesses, he could not recall if he had informed plaintiff of this right."). Ms. Branham's contract did not. Moreover, the court in *Renny* held that the proceeding was generally unfair, not because the plaintiff was not permitted to call witnesses, but because she was not given *any* opportunity to "present evidence and arguments and the fair opportunity to rebut evidence and argument by the opposing argument." *Id.* at 338-39.

Properly read, however, *Renny* actually undermines Ms. Branham's claim that the process she received was somehow unfair. *Renny* identified five "essential elements" to a fair process: (1) notice; (2) opportunity to present evidence and arguments; (3) formulation of issues; (4) a rule of finality; and (5) other procedural elements demanded by the particulars of the case. *Id.* This formulation echoes both the classic definition of "due process" as notice and the opportunity to be heard. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). It also echoes the well established recognition that the particular procedures beyond that are flexible and tailored to the unique circumstances of each case. *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319, 333-34 (1976); *Goss v. Lopez*, 419 U.S. 565, 577-78 (1975). Ms. Branham received all of the procedures and more that apply under *Renny*'s formulation, or that would apply under a traditional due process analysis in a public setting. Her repeated claim of the need for direct and cross-examination of

9

witnesses rings particularly hollow in this case, where the key facts of her assigned class load, the validity of that load under her contract, and her refusal to teach the assigned classes was beyond genuine dispute.

Nor does elementary fairness require other steps that Ms. Branham contends should have been taken in her termination process, such as permitting her unlimited time to speak, limiting the people who could be included in the decision-making body, limiting only the Law School in the materials it could disseminate to the faculty before the hearing, or preventing members of the decision-making body from voting by proxy. Although Ms. Branham could have contracted for any of the particular procedural guarantees she now complains were lacking, she did not. As discussed above, Ms. Branham actually received the process guaranteed by her contract, and those processes more than met the minimum tenets of elementary fairness. *See Renny*, 398 N.W.2d 327, 338-39. It is beyond all question that Ms. Branham had actual notice of the issues the faculty conference was set to consider and the evidence against her, and she had more than a minimally fair opportunity to present her case to the faculty–in written, visual, electronic, and oral forms. Her contract did not entitle her to any of the particular guarantees or processes about which she now complains. *See id.* Nothing more than the lesser of her contract provisions or "elementary fairness" is required, and she received more than both. *See id.* Accordingly, Ms. Branham was afforded the tenure hearing process guaranteed to her by contract. *See id.*

II.   The parties agreed that the result reached in the process was final.

Ms. Branham contends that even if she got the process guaranteed by her contract and elementary fairness, she still has the right to submit the good-cause question afresh in some kind of judicial review of the merits of the Law School's determination. In Michigan, "contracts for

permanent employment are for an indefinite period of time and are presumptively construed to provide employment at will." *Rowe*, 473 N.W.2d at 271. Employers and employees may modify that baseline situation by agreeing to a "for cause" employment relationship, under which the employer may discharge the employee for good cause only. *See id.* Such a modification of the baseline employment relationship may be oral or in writing, and it may be express or by implication. *See id.*; *see generally Toussaint*, 292 N.W.2d at 891.

When an employer agrees without restriction to discharge an employee only for good cause, "its decision to terminate the employee is subject to judicial review." *Renny v. Port Huron Hosp.*, 398 N.W.2d 327, 334 (Mich. 1986). In such cases, "[t]he jury decides as a matter of fact whether the employee was discharged for cause." *Id.* Parties to an employment contract may agree to avoid judicial review of the merits of the cause determination, however, by contracting for "an internal grievance procedure" or "an alternative method of dispute resolution." *Id.* Indeed, parties can provide in their contract for specific ways of deciding good cause, and they can even provide that the good cause decision remain in the hands of the employer and out of the courts. *See, e.g., id.* In such a case, the only questions for the court are whether the employer actually made its determination in accordance with the contractually guaranteed procedures and whether the contractual procedures comply with elementary fairness. *See id.* at 337, 338; *Carrasco v. Spectrum Health Hosps.*, No. 1:06-cv-781, 2008 WL 351647, *7 (W.D. Mich. Feb. 6, 2008) ("Michigan courts have held that where an employer has reserved for itself the authority to determine whether there was good and just cause, and where the employer determined that there was good and just cause for terminating the employee's employment, terminating plaintiff's employment was not a breach of the employment contract." (internal quotation marks and quotation omitted)); *Thomas v. John Deere*

*Corp.*, 517 N.W.2d 265, 267 (Mich. Ct. App. 1994). When the parties agree to leave the just cause decision in the hands of the employer subject to certain procedural guarantees, there is no room for judicial second guessing of the merits of the employer's determination. *Carrasco*, 2008 WL 351647 at *7; *Thomas*, 517 N.W.2d at 267.

The contract the parties entered in this case is of the latter type: It requires a good cause for termination, but it specifies the particular procedures for determining good cause, and it ultimately leaves the question of good cause up to the employer. Specifically, Ms. Branham's contract incorporates Policy 201, under which she could not be dismissed "except for good cause shown and in accordance with the following procedure." (Docket # 115 ex. A-2 ¶ 12.) Policy 201 provides certain limited procedural rights, including notice, a meeting of the faculty conference, counsel for the professor, and a stenographic recording. (*Id.*) It also provides that "[t]he Board of Directors shall have final authority in all matters of dismissal." (*Id.*) These procedures are binding, *see Renny*, 389 N.W.2d at 337, and they provide "elementary fairness," *see id.* at 338. The only question for the Court in such a case is whether the employer actually decided good cause in accord with the contractually provided procedures, not whether the decision was correct, sensible, or good in the abstract.

Here, the Law School followed every aspect of the "internal grievance procedure" provided in Ms. Branham's good-cause contract, she thereby was afforded "elementary fairness," and the Law School reserved for itself the final authority to determine whether there was good and just cause. *See id.* at 337, 338; *Carrasco*, 2008 WL 351647 at *7. Ms. Branham therefore cannot contest in this Court the substance of the Law School's final decision. *See Renny*, 389 N.W.2d at 337, 338; *see also Thomas*, 517 N.W.2d at 267 ("[A]s long as the determination that just cause existed was made

12

by the designated personnel, it is not possible for plaintiff to state a claim that defendant breached plaintiff's employment contract by terminating his employment."); *Carrasco*, 2008 WL 351647 at *7.

Ms. Branham's contentions that she is entitled to additional judicial review are unavailing. She first contends that the Law School Board of Directors abdicated its final authority by giving unfettered discretion to Dean LeDuc. She offers no support in favor of this contention, and it is contrary to the evidence in this case. Second, she contends that a law school cannot in its contract preclude judicial review of its good-cause determination and also comply with the ABA standards. Although she has offered the testimony of Dean Read on this point, the Law School's compliance or lack thereof with ABA standards is an issue between the Law School and the ABA. It has no bearing in this case, which must be determined on the basis of Ms. Branham's contract and Michigan law. *Cf. Rowe*, 473 N.W.2d at 271. And as discussed above, the Law School's process complied with the guarantees in Ms. Branham's contract, which itself complies with Michigan law and elementary fairness, and the Law School reserved for itself the final authority to determine whether there was good and just cause. *See Renny*, 398 N.W.2d at 332, 337-38. Accordingly, no additional judicial review of the merits of the Law School's determination is permitted. *See id.* at 337-38; *Carrasco*, 2008 WL 351647 at *7.

III.     The parties did not agree to a severance package.

Ms. Branham contends that she is entitled to one year of salary under the ABA Statement on Academic Freedom and Tenure even if she loses on everything else. (*See* docket # 115 ex. A-14.) Ms. Branham's 2007 contract with the Law School incorporated "[t]he current provisions of the American Bar Association standards governing approval of law schools as they relate to maximum

13

teaching loads and other rights, duties, and prerogatives of faculty members." (*See* docket # 115 ex. A-1 at 4.) The 2007-2008 ABA Standards for Approval of Law Schools provides in "Appendix 1: Statement on Academic Freedom and Tenure" that "[t]eachers on continuous appointment who are dismissed for reasons not involving moral turpitude should receive their salaries for at least a year from the date of notification of dismissal whether or not they are continued in their duties at the institution." (Docket # 115 ex. A-14 at 146.) The body of the 2007-2008 ABA Standards provides, however, that "[a] law school shall have an established and announced policy with respect to academic freedom and tenure *of which Appendix 1 herein is an example but is not obligatory*." *See* 2007-2008 ABA Standards for Approval of Law Schools § 405(b) (emphasis added).[2] Accordingly, although Ms. Branham's contract incorporates the ABA standards, the language on which she relies is merely a example of an acceptable provision–not an ABA standard giving her a right that was incorporated into her contract and that could entitle her to recovery. *See id.* Moreover, the Law School has affirmatively adopted a tenure policy as required by the ABA Standards, and that policy is embodied in Policy 201. As discussed above, the Law School implemented and complied with Policy 201 during the tenure process ordered by this Court and in which the faculty, the Academic Committee, and ultimately the Board of Directors determined good cause for Ms. Branham's removal. Neither Ms. Branham's contract nor Policy 201 has a guaranteed severance package. Accordingly, Ms. Branham has not established a contractual basis on which she can recover one year of salary after losing the tenure hearing.

---

[2] This provision is available on the ABA website at http://www.abanet.org/legaled/standards/20072008StandardsWebContent/Chapter%204.pdf.

## Conclusion

The core of this case is very simple. The Law School assigned a tenured faculty member a normal and contractually permitted set of courses to teach. The faculty member refused to teach them for reasons she deemed proper, but that the Law School did not. Those reasons rooted in the faculty member's perception of the Law School's motivation for the assignment, and of her own limitations on time and energy available for preparation. Ultimately, both sides presented their respective cases to the faculty in a tenure hearing, and the faculty voted overwhelmingly against the professor. The Board of Directors later voted unanimously to sustain the original decision of the Dean and the vote of the faculty. No reasonable faculty member has anything to fear from the result here. Indeed, it would lead to academic chaos if tenured faculty could with impunity refuse a lawfully and contractually permitted teaching assignment of the institution. Insubordination necessarily has real consequences in the workplace, even for tenured faculty. Ms. Branham has received the process guaranteed by her contract for determining whether there was cause to terminate her employment. There is no legal basis on which the Court could second guess the merits of that determination, which complied with the contractual process and elementary fairness. Accordingly, Defendants are entitled to judgment in their favor.


Dated:     September 7, 2010              /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          UNITED STATES DISTRICT JUDGE